[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

————————————

No. 20-14809

Non-Argument Calendar

————————————

DANILO MALDONADO MACHADO,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A216-124-121

————————————

Before WILSON, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Danilo Maldonado Machado seeks review of the Board of Immigration Appeal's (BIA) final order affirming the Immigration Judge's (IJ) denial of his applications for adjustment of status, waiver of inadmissibility, and asylum. Machado argues that the BIA erred because the IJ (1) violated his constitutional right to due process, and (2) erred in holding that he is ineligible for an adjustment of status under the Cuban Adjustment Act (CAA).

                                I.

Machado, a native and citizen of Cuba, is a graffiti artist and activist who uses art to protest and criticize the Castro regime. Due to his work as an activist, he has been arrested and imprisoned by the Cuban government on several occasions. On April 16, 2018, Machado was admitted to the United States on a six-month B2 visitor's visa and remained past the expiration date of his visa. In November 2018, the Department of Homeland Security issued him a Notice to Appear, charging him as removable for remaining in the United States for a longer period than permitted by his visa. Machado conceded removability and filed an application for adjustment of status under the CAA. He also filed an application for waiver of inadmissibility related to his daughter.

On August 14, 2019, the IJ held a hearing regarding his applications for adjustment of status and waiver of inadmissibility.[1] During the hearing, the government filed a Form I-261 which contained an additional factual allegation that Machado had been convicted of aggravated stalking under Fla. Stat. § 784.048(4). The form listed Alexandra Martinez, Machado's ex-girlfriend, as the victim of this crime. Martinez is also the mother of Machado's daughter.[2] As a result, the form charged him as removable for having been convicted of a crime involving moral turpitude (CIMT). Machado admitted that he was convicted of aggravated stalking but denied the charge of removability. The IJ sustained the charge of removability and held a hearing on the issue.

At the hearing, both parties provided testimony and admitted evidence related to Machado's overall moral character. Machado testified that he was born in Cuba, worked as an artist and peaceful human rights activist, and had two children. He recounted how he met Martinez and that, although their relationship ended, he never threatened her in any manner nor was he capable of being violent toward her. He acknowledged that was arrested

---

[1] He filed his applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) later in the proceedings while before the IJ.

[2] Martinez, a journalist, met and interviewed Machado while he was imprisoned in Cuba for organizing a march in the aftermath of Fidel Castro's death. Martinez visited him in jail three times and became pregnant with their daughter, who was born in the United States.

on September 18, 2018, for violating a restraining order Martinez filed against him, but stated it was a misunderstanding. Machado stated that he did not abuse drugs, including cocaine. Machado called several witnesses who collectively described him as a peaceful activist and non-violent person who did not abuse drugs or appear capable of stalking or harassing another.

The government called Martinez to testify in support of the charge of removability. She testified that she ended her year and a half relationship with Machado and relocated to her parents' home with their daughter. She said she made this decision because she feared for her and her daughter's safety due to Machado's prolonged drug use, erratic behavior, and his rough handling of their daughter. Martinez testified that Machado's behavior worsened once the relationship ended, with Machado following her, banging on her car windows, forcing himself on her during supervised visits in front of their daughter, and refusing to leave after such visits. She decided to file a petition for a restraining order after Machado sent her threatening text messages saying that she would regret ever having said no to him, he was going to have her on a tight leash one day, and he was going to publish photos of her.

Following Martinez's testimony, the IJ continued the matter to allow Machado to file an application for asylum, withholding of removal, and protections under CAT. Machado stated in his applications that he had previously experienced mistreatment at the hands of Cuban police and feared future harm or mistreatment if he were to return to Cuba.

The government then submitted documents provided by Martinez to substantiate her testimony that the IJ marked as Exhibit 12. Machado's counsel reviewed Exhibit 12 and stated they would object to most of the documents because nothing was signed, certified, or notarized. Nevertheless, the IJ concluded that the documents were in support of Martinez's testimony.

Each party submitted further statements and documents to corroborate their respective testimony and positions. Machado submitted documents to support his asylum claim which included (1) letters from friends and political acquaintances attesting to his good and peaceable character; (2) several articles detailing his arrests and notoriety in Cuba on account of his political opinions and activism; (3) a copy of his testimony before the United States Senate concerning human rights abuses in Cuba; and (4) a copy of the article written by Martinez detailing Machado's arrest and detention by Cuban officials.

The government's submissions included (1) screenshots of threatening messages purportedly sent from Machado to Martinez in Spanish with uncertified translations; (2) a photo posted on social media that appears to depict Machado snorting cocaine; (3) a domestic violence report filed in Holland by the mother of Machado's other child, stating that Machado had mistreated her emotionally, was unstable, and was psychologically blackmailing her, causing her to be afraid and to think that he was dangerous; (4) a statement from an art collector claiming that Machado impersonated him and stole all of the art he had purchased from Machado since 2015; and

(5) other social media posts that show guns and weapons allegedly in the possession of Machado.  The IJ allowed both parties submissions into the record.  The IJ, however, was unable to finish the case and thus a substitute IJ was assigned.

The substitute IJ issued a written decision, stating that he had "familiarized [himself] with the entire record of proceedings" and was "prepared to render [his] decision." The substitute IJ noted that he had "considered all admitted evidence in its entirety, regardless of whether specifically mentioned in the text of this decision."  The substitute IJ found that, after considering the totality of the circumstances, Machado lacked credibility because his account of events was inconsistent with the other evidence in the record. The substitute IJ also determined that Machado had not established eligibility for a waiver of inadmissibility because he had not shown that denial of his admission to the United States would cause his daughter extreme hardship.

As to Machado's request for adjustment of status under the CAA, the substitute IJ found that Machado was ineligible due to his Florida conviction for aggravated stalking, which the substitute IJ determined to be a CIMT.  Alternatively, the substitute IJ determined that Machado did not merit a favorable exercise of discretion for a litany of reasons including, but not limited to, (1) his serious conviction for aggravated stalking; (2) his violation of a restraining order; (3) Martinez's testimony that she feared Machado due to his erratic behavior and drug use; (4) the photograph of Machado that appears to depict cocaine use; (5) the domestic violence

report filed in Holland; (5) the social media posts showing photos of firearms and weapons; (6) Machado's lack of rehabilitation and remorse for his actions; and (7) the fact that Machado lacked significant ties to the United States.

As to Machado's asylum claim, the substitute IJ found that his application for asylum was untimely and that the circumstances did not merit an exception to the filing deadline. Further, the substitute IJ summarily found that it would not exercise its discretion to grant Machado asylum. Nonetheless, the substitute IJ found that Machado had suffered persecution and would suffer persecution by the Cuban government in the future based on a protected ground and granted Machado's application for withholding of removal. The BIA affirmed the substitute IJ's findings. Machado appealed the BIA's denial of his applications for waiver of inadmissibility, adjustment of status, and asylum.

## II.

On appeal, Machado makes two arguments. First, he argues that his due process rights were violated by the admission of unauthenticated evidence, the giving of excessive weight to such evidence, the initial IJ's expressions of impatience and distraction during the removal hearing, and a substitute IJ reaching an adverse credibility finding without having witnessed the live hearing. Second, he argues that the BIA erred in affirming the substitute IJ's holding that he was not eligible for an adjustment of status under CAA based on its finding that his Florida conviction for aggravated stalking was a CIMT. We address each argument in turn.

A.

We first turn to Machado's due process claim. "We review the BIA's decision only, except where, as in this case, the BIA expressly adopted or agreed with the immigration judge's decision." *Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1372 (11th Cir. 2021). "We review factual findings under the substantial evidence test and legal conclusions *de novo*." *Id.*

Due process requires that petitioners in removal proceedings "be given notice and an opportunity to be heard." *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010) (per curiam). To establish a due process violation, the petitioner must show that he was deprived of liberty without due process and that the asserted errors caused him substantial prejudice. *Id.* To show substantial prejudice, the petitioner must demonstrate that the outcome of the proceeding would have been different but for the alleged errors. *Id.*

Machado's due process rights were not violated by the IJ's admission and weighing of unauthenticated evidence because such evidence was probative of his character and relevant to the issue of whether he would receive the requested relief. *See In re Y-S-L-C-*, 26 I. & N. Dec. 688, 690 (BIA 2015) ("It is well established that the Federal Rules of Evidence are not binding in immigration proceedings, where the test for admitting evidence is whether it is probative and its admission is fundamentally fair."); *In re D-R-*, 25 I. & N. Dec. 445, 458 (BIA 2011) ("Immigration Judges have broad discretion to admit and consider relevant and probative evidence.").

Moreover, Machado has not shown that the outcome of the proceedings would have been different but for the admission of such evidence. *See Lapaix*, 605 F.3d at 1143.

Machado's due process rights also were not violated by the initial IJ's expressions of impatience and distraction during the hearing. Such expressions were not evidence of judicial bias and occurred at insubstantial moments during the proceedings, and Machado nevertheless was given notice and opportunity to be heard. *See id.* at 1143–44. Further, his due process rights were not violated by the substitute IJ reaching an adverse credibility finding without having witnessed the live hearing because the IJ complied with federal regulations in doing so and considered the entire record. 8 C.F.R. § 1240.1(b) (providing that if an IJ becomes unavailable to complete their duties, another IJ may be assigned to complete the case and that the new IJ shall familiarize themself with the record and state for the record that they have done so).

## B.

We now turn to Machado's second argument that the BIA erred in determining that he was not eligible for an adjustment of status under the CAA.

Whether a petitioner's conviction qualifies as a CIMT is a legal question that we retain jurisdiction to review. *Cano v. U.S. Att'y Gen.*, 709 F.3d 1052, 1053 (11th Cir. 2013) (per curiam). We, however, decline to review whether the Florida aggravated stalking constitutes a CIMT. This is because even if Florida aggravated

stalking does not constitute a CIMT, the substitute IJ alternatively denied relief based on its finding that Machado did not warrant a favorable exercise of discretion. *See Amaya-Artunduaga*, 463 F.3d at 1250.

The BIA found that Machado did not meaningfully challenge the IJ's discretionary finding on appeal to the BIA. Such a finding was proper because, although Machado argued that the IJ's alleged due process violations undermined the discretionary analyses in the case, he did not specifically challenge the substance of the alternative discretionary finding. Thus, Machado failed to exhaust any argument that the substance of the IJ's alternative discretionary finding was improper, and this court lacks jurisdiction to consider any such argument. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1251 (11th Cir. 2006) (per curiam) (finding the court lacked jurisdiction to consider a claim the petitioner did not raise before the BIA).

The denial of discretionary relief does not implicate a constitutional right or question of law, and, thus, this court does not have jurisdiction to review the substance of the IJ's alternative discretionary finding. *Cano*, 709 F.3d at 1053; *Mohammed v. Ashcroft*, 261 F.3d 1244, 1250 (11th Cir. 2001) (a petitioner has no constitutional right to discretionary relief). To the extent that Machado argues that the IJ violated his due process rights in reaching the alternative finding, such an argument is meritless because Machado was given notice and an opportunity to be heard and failed to raise the argument. *See Lapaix*, 605 F.3d at 1143. Regardless of

whether the Florida aggravated stalking constitutes a CIMT, the substitute IJ's alternative discretionary finding was a valid basis to deny his application for adjustment of status under the CAA. *Perez v. USCIS*, 774 F.3d 960, 965 (11th Cir. 2014) (per curiam). Accordingly, we affirm.

**Petition Denied.**