# Matter of Y-S-L-C-, Respondent

*Decided November 23, 2015*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The requirements of the Federal Rules of Evidence with respect to the admission of expert testimony are inapposite to a respondent's testimony regarding events of which he or she has personal knowledge.

(2) Conduct by an Immigration Judge that can be perceived as bullying or hostile is never appropriate, particularly in cases involving minor respondents, and may result in remand to a different Immigration Judge.

FOR RESPONDENT: Gilardo J. Arcila, Esquire, Doraville, Georgia

FOR THE DEPARTMENT OF HOMELAND SECURITY: Ginger Vaudrey, Assistant Chief Counsel

BEFORE: Board Panel: ADKINS-BLANCH, Vice Chairman; HOLMES and GREER, Board Members.

HOLMES, Board Member:

In a decision dated March 2, 2015, an Immigration Judge denied the respondent's request for withholding of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). The respondent has appealed from that decision. The Department of Homeland Security ("DHS") opposes the appeal. The record will be remanded.

The respondent is a 15-year-old child from Guatemala who arrived in the United States on June 5, 2014. According to the respondent, one of his early memories was of his house being fired upon when he was 4 years old. Apparently, gang members tried to enter the house and shot at the door when the respondent's mother refused to open it. The respondent fled the house through a window with his mother and younger sister, spent the night with his grandparents, and then moved to another area. His family was then blackmailed by gang members, and when they stopped paying the demand money in 2005, the respondent's uncle was killed.

For some years thereafter, the trouble in the respondent's life subsided. However, in 2012, gang members again extorted his family, threatening to kill him and his sister if his mother and aunt did not pay the demanded sum. During this period, the respondent saw three corpses near his house. In 2013, another uncle was taking the respondent and his sister to school when they were accosted by two men with guns and machetes. The respondent and his sister fled and hid in someone's home.

On another occasion, an extortion letter was thrown into the respondent's school, warning that a grenade would be thrown next if the extortion demands made against his family members were not met. The respondent stopped attending school for several months. In 2014, after an incident in which the respondent was personally threatened, his mother, who was then in the United States, arranged for him to join her in this country.

At a hearing before the Immigration Judge, the respondent's counsel attempted to question him regarding the effect that his experiences in Guatemala had on him. The following colloquy occurred:

> [COUNSEL] TO [THE RESPONDENT]
>   Q. These events that you suffered and endured in Guatemala, have they caused
>   you any psychological issues; nightmares─
> JUDGE FOR THE RECORD
>   We'll qualify him as an expert witness.
> JUDGE TO [THE RESPONDENT]
>   Q. Sir, how far have you gone in school?
>   A. How far did I go in school? The 6th grade.
>   Q. Have you ever lectured on a professional level on psychology?
> [COUNSEL] TO JUDGE
>   Your Honor, I'm not trying to qualify him as an expert. All I'm asking is
>   questions about his personal answers. He can tell us if he's had nightmares. He
>   can tell us if he's had terrors.
> JUDGE TO [COUNSEL]
>   You can ask specific questions. You can't ask leading questions. You asked him
>   what psychological problems. I'm getting the background to understand whether
>   he can testify as to psychological problems.
> [COUNSEL] TO JUDGE
>   Well, Your Honor, he's not─
> JUDGE TO [COUNSEL]
>   If you're willing to stipulate that he has never lectured at the university or
>   professional level, he's never written any professional journals, and he's never
>   had any training on psychology, then I will allow him to testify as a lay witness.
>   But he's not going to testify as to vague psychological problems. You can ask
>   him if he has experienced difficulties because of what he saw when he was
>   4 years old in Guatemala and questions like that. But you cannot ask him the
>   psychological impact.

First, regarding this colloquy, we conclude that the Immigration Judge erred in suggesting that the respondent had to be qualified as an expert witness.  Under the Federal Rules of Evidence, a lay witness is prohibited from giving an opinion based on "scientific, technical, or other specialized knowledge," which can be offered only by a witness who is qualified as an expert.  *See* Fed. R. Evid. 701(c), 702(a).

It is well established that the Federal Rules of Evidence are not binding in immigration proceedings, where the test for admitting evidence is whether it is probative and its admission is fundamentally fair.  *See, e.g.*, *Matter of D-R-*, 25 I&N Dec. 445, 458 (BIA 2011); *Matter of Ponce-Hernandez*, 22 I&N Dec. 784, 785 (BIA 1999).  Nevertheless, they may provide helpful guidance "because the fact that specific evidence would be admissible under the Federal Rules 'lends strong support to the conclusion that admission of the evidence comports with due process.'" *Matter of D-R-*, 25 I&N Dec. at 458 n.9 (quoting *Felzcerek v. INS*, 75 F.3d 112, 116 (2d Cir. 1996)).

The respondent's attorney asked him to testify regarding events that the respondent himself experienced, such as nightmares or other reactions to the trauma he suffered.  Therefore the respondent had personal knowledge of the matters addressed and did not offer opinion testimony at all.  *See* Fed. R. Evid. 602.  Consequently, the requirements regarding the admission of expert and lay opinion testimony are inapposite to the respondent's testimony, which, in any case, was in compliance with the Federal Rules. *See id.*; *see also, e.g.*, *United States v. Champion*, 813 F.2d 1154, 1172 (11th Cir. 1987) (finding that a witness' testimony regarding the events at issue was based on her personal knowledge and was therefore not opinion testimony).  Moreover, his testimony was probative and its admission was fundamentally fair.

Second, and more significantly, we cannot condone the Immigration Judge's treatment of the respondent through this questioning.  Courts have stressed that a respondent in immigration proceedings should expect dignity, respect, courtesy, and fairness in a hearing before an Immigration Judge.  *Cham v. Att'y Gen. of U.S.*, 445 F.3d 683, 690−91 (3d Cir. 2006) (stating that such terms are "not merely advisory or aspirational" and that an alien is "entitled, as a matter of due process, to a full and fair hearing on his application").

Conduct by an Immigration Judge that can be perceived as bullying or hostile can have a chilling effect on a respondent's testimony and thereby limit his or her ability to fully develop the facts of the claim.  *See id.* at 692; *Wang v. Att'y Gen. of U.S.*, 423 F.3d 260, 271 (3d Cir. 2005).  Such behavior also creates the appearance that an Immigration Judge has abandoned his or her role as a neutral fact-finder and raises a question

whether the respondent was given a "full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf." *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). Moreover, the mere appearance of bias on the part of an Immigration Judge can diminish the stature of the judicial process that he or she represents. *Sukwanputra v. Gonzales*, 434 F.3d 627, 638 (3d Cir. 2006).[1]

It is difficult to view the above exchange as anything other than belittling to the respondent and insensitive to the difficult matters about which counsel was trying to question him. While such treatment of any respondent is never appropriate, it is particularly misplaced in these proceedings considering the respondent's young age, his past experiences, and the fact that his counsel was attempting to elicit the effects that the frightening events he experienced in Guatemala may have had on him.[2] Regardless of whether the respondent is ultimately found to be eligible for relief from removal, the Immigration Judge did not question his credibility or whether the events he described occurred.[3]

We conclude that this hearing was not conducted in a manner that meets the high standards expected of Immigration Judges. Consequently, we find it appropriate to vacate the Immigration Judge's decision and remand the record to the Immigration Court for a new hearing before a different Immigration Judge. *See Ali v. Mukasey*, 529 F.3d 478, 492−93 (2d Cir. 2008) (remanding with instructions to reassign the case where the Immigration Judge's conduct resulted in an appearance of bias or hostility that precluded the court's meaningful review); *Sukwanputra v. Gonzales*, 434 F.3d at 638 (suggesting that the case should be reassigned to a different Immigration Judge on remand "to ensure fairness and the appearance of

---

[1] To provide context for these circuit court decisions, we note that they were published over the 6-year period from 2000 to 2006, during which Immigration Judges entered final decisions in over 1,250,000 cases, some 50,000 of which were ultimately subject to petitions for review before the courts of appeals. Like the case before us, the above-cited decisions involved proceedings that were not representative of the fair and professional hearings that are conducted daily by Immigration Judges under challenging conditions.

[2] The importance of sensitivity in questioning a child and the special significance of the "language and tone" employed are addressed in an Operating Policies and Procedures Memorandum ("OPPM") from the Chief Immigration Judge, entitled "Guidelines for Immigration Court Cases Involving Unaccompanied Alien Children." OPPM 07-01, at 7 (May 22, 2007), http://www.justice.gov/eoir/efoia/ocij/oppm07/07-01.pdf.

[3] We note that a psychological report prepared by a licensed Master Social Worker, who met with the respondent and his mother for several hours, was presented in this case. This report discusses the violence to which the respondent and his close family members were exposed, beginning with the violent episode at his home when he was 4 years old. The report concludes that the respondent suffers from Post-Traumatic Stress Disorder. However, the Immigration Judge did not refer to this report in his decision.

impartiality"). The parties will have an opportunity on remand to provide additional evidence and arguments regarding the respondent's eligibility for withholding of removal under the Convention Against Torture and for any other relief from removal for which he may be eligible.

**ORDER:** The decision of the Immigration Judge is vacated.

**FURTHER ORDER:** The record is remanded to the Immigration Court for assignment to a new Immigration Judge and for further proceedings consistent with the foregoing opinion.