**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-2048

RODOLFO JOSUE TINOCO ACEVEDO,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: May 4, 2022                          Decided: August 11, 2022

Before GREGORY, Chief Judge, MOTZ, and WYNN, Circuit Judges.

Petition for review granted; vacated and remanded by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Motz and Judge Wynn joined.

**ARGUED:** Benjamin Ross Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Kathleen Kelly Volkert, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brian M. Boynton, Acting Assistant Attorney General, Jeffrey R. Leist, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

GREGORY, Chief Judge:

Petitioner Rodolfo Josue Tinoco Acevedo appeals an order of the Board of Immigration Appeals ("BIA") affirming the denial of his application for cancellation of removal. Because the BIA failed to address whether Tinoco Acevedo's case should be remanded to a new immigration judge ("IJ") under *Matter of Y-S-L-C-*, 26 I. & N. Dec. 688 (BIA 2015), we grant Tinoco Acevedo's petition for review, vacate the order of removal, and remand to the BIA for further proceedings consistent with this opinion.

I.

A.

Tinoco Acevedo, a citizen of Nicaragua, first entered the United States on a nonimmigrant visa in 2001. In 2008, Tinoco Acevedo obtained legal permanent resident status, based on his marriage to a United States citizen, and today he has three United States citizen children.[1] Since immigrating to the United States, Tinoco Acevedo has traveled to Nicaragua to visit his family. When returning from one such visit in 2019, Tinoco Acevedo applied for admission to the United States as a returning permanent resident. Due to his criminal record, however, his inspection was deferred for an admissibility determination.

While living in the United States, Tinoco Acevedo incurred multiple convictions, including one conviction for contributing to the delinquency of a minor, and three

---

[1] Tinoco Acevedo and his wife share two children and are now divorced. *See* A.R. 210–11. At the time of appeal, Tinoco Acevedo confirmed his engagement to another United States citizen with whom he shares one child. *See* A.R. 212.

convictions for driving while intoxicated.[2]  Under 8 U.S.C. § 1182(a)(2)(B), a noncitizen is considered inadmissible when he has been convicted of criminal offenses for which the aggregate sentence equals five years or more.  Because the aggregate sentence for Tinoco Acevedo's convictions exceeded five years, the Department of Homeland Security ("DHS") issued a Notice to Appear charging him with removability on October 22, 2019.  *See* 8 U.S.C. § 1182(a)(2)(B); A.R. 392–94.  This is the second time that Tinoco Acevedo has been placed in removal proceedings.[3]  Here, Tinoco Acevedo conceded removability and applied for cancellation of removal for a permanent resident.

B.

Under 8 U.S.C. § 1229b(a), "[t]he Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States" if he:  (1) was a permanent resident for at least five years; (2) continuously resided in the United States for

---

[2] Tinoco Acevedo's Notice to Appear referenced these convictions from Virginia state court:  (1) a 2005 conviction for contributing to the delinquency of a minor, resulting in 12 months' incarceration; (2) a 2012 conviction for driving while intoxicated, resulting in 90 days' incarceration; (3) three 2013 convictions including one conviction for driving while intoxicated, resulting in 180 days' incarceration, one conviction driving with a suspended license, resulting in 90 days' incarceration, and one conviction for driving while intoxicated for a second time within a five-year span, resulting in 80 days' incarceration; (4) a 2015 conviction for injuring property, resulting in 60 days' incarceration; and (5) two 2017 convictions including one conviction for driving while intoxicated for a third time within a five-year span resulting in 5 years' incarceration, and one conviction for driving after forfeiture of a license resulting in 12 months' incarceration.  A.R. 394.

[3] Tinoco Acevedo was placed in removal proceedings for the first time in 2009 on the grounds of his 2005 conviction for contributing to the delinquency of a minor.  A.R. 98.  After finding that the statute under which Tinoco Acevedo was convicted did not qualify as a crime of moral turpitude, the IJ dismissed the charge and terminated the removal proceedings.  *Id.*

3

seven years after being admitted; and (3) has not been convicted of an aggravated felony. Both parties agreed that Tinoco Acevedo met these qualifications and the question before the IJ was whether Tinoco Acevedo merited relief as a matter of discretion.

On February 13, 2020, an IJ conducted a hearing on Tinoco Acevedo's application for cancellation of removal. Tinoco Acevedo pointed to factors that he argued supported granting relief. Two of these factors included the financial and emotional support he provided to his three United States citizen children, as well as the steps he had taken to rehabilitate his alcohol addiction. Tinoco Acevedo also testified that after living in the United States as an adult for twenty years, he felt like a "stranger" in Nicaragua. A.R. 135. Counsel asked whether Tinoco Acevedo felt "in control of the Spanish language" and the following exchange occurred. *Id.*

| | |
|---|---|
| Tinoco Acevedo: | I can speak Spanish, but not like, I say 100 percent. I would say, like 60 to like no, it's, it's— |
| IJ: | No. That makes no sense. I'm terribly sorry, sir. You, you were how old when you came to the United States? Eighteen? |
| Tinoco Acevedo: | Eighteen. |
| IJ: | And you're claiming that at 38, you can only function [at] 60 percent in Spanish. [B]ecause I really find that so incredible, *it's laughable*. Seriously, I— |
| Tinoco Acevedo: | The thing is the words that I—I'm sorry, Your Honor. The thing is the words they use back—the words, the way they speak back home is different than the way they speak Spanish, here. |
| IJ: | So, what? What's your point? |
| Tinoco Acevedo: | The language, the Spanish. |

4

| | |
|---|---|
| IJ: | Well, so what's so different about Spanish in Nicaragua that's different from Spanish spoken in the United States [by] all kinds of people from many different Latin speaking countries? |
| Tinoco Acevedo: | Yes, one thing can mean different things in other Spanish. |
| IJ: | Okay. So, because of that, you think [you're] at 60 percent proficiency. Is that what you're saying? |
| Tinoco Acevedo: | No. It's not only that. I don't, I don't know how to explain it. |
| IJ: | That's fine. |
| Tinoco Acevedo: | It's just hard. To explain it, saying—how do you say it? |
| IJ: | Never mind. |

A.R. 135–37 (emphasis added). Then, speaking directly to Tinoco Acevedo's attorney, the IJ stated, "Go ahead. I mean, I don't even know why you went there. I mean, it sounds *so stupid, honest to God*. Eighteen years old and you actually ask that kind of a question? If he was eight or nine, maybe, maybe. Let's move on, please." A.R. 137 (emphasis added).

During cross-examination, the government attorney asked Tinoco Acevedo about his 2005 conviction. This line of questioning revealed that Tinoco Acevedo was accused of exposing his genitals to his eleven-year-old cousin and pleaded guilty to contributing to the delinquency of a minor under Va. Code. Ann. 18.2-371. A.R. 98, 139–41. Although the government attorney referenced the police report describing the facts that led to this conviction, no attempt was made to offer the police reports into the record. The government attorney did, however, inform the IJ that Tinoco Acevedo's 2005 conviction and the police report were filed during Tinoco Acevedo's first removal proceeding.

5

At the end of the hearing, the IJ stated that she was "truly, truly at the cusp," and the case could "go either way." A.R. 171. On March 13, 2020, however, the IJ issued a written decision denying Tinoco Acevedo's application for cancellation of removal. A.R. 97–109. In weighing Tinoco Acevedo's positive and negative factors, the IJ discussed the police report relevant to Tinoco Acevedo's 2005 conviction. Because the police report was not submitted into the record, the IJ had retrieved it after the hearing by reviewing the record from Tinoco Acevedo's first removal proceeding. The IJ found the police report "[m]ost concerning," but also explained that Tinoco Acevedo's criminal history outweighed his positive factors. A.R. 108; *see* A.R. 107.

Tinoco Acevedo appealed to the BIA and argued that the IJ's denial of relief should be reversed because: (1) the IJ improperly considered the police report and violated Tinoco Acevedo's right to due process by not allowing him to respond to it; and (2) Tinoco Acevedo's positive factors outweighed his negative factors. In the alternative, Tinoco Acevedo argued that his case should be remanded to a new IJ because the initial IJ failed to meet the high standard expected of IJs under *Matter of Y-S-L-C-*. *See* A.R. 36–49.

Affirming the IJ's decision, the BIA held that Tinoco Acevedo's criminal record, specifically focusing on his alcohol-related convictions, was too serious to warrant granting discretionary relief. Given his other convictions, the BIA found that even assuming—without deciding—that the IJ's reliance on the police report was inappropriate, Tinoco Acevedo still failed to meet his burden establishing that he merited relief. And regardless of the police report, Tinoco Acevedo's one-year sentence for his 2005 conviction "underscore[d] the gravity of the crime." A.R. 4. The BIA also noted that because this was Tinoco Acevedo's

6

second removal proceeding, he had been "put on notice that further criminal conduct could lead to adverse immigration consequences." *Id.*

In response to Tinoco Acevedo's alternative argument that his case should be remanded to a new IJ, the BIA concluded that while it did "not condone the [IJ's] offhand remarks" concerning Tinoco Acevedo's Spanish fluency, the "record as a whole" demonstrated that the IJ behaved in a professional manner. A.R. 5. Therefore, the BIA found it sufficient to hold that Tinoco Acevedo failed to establish that the IJ caused him to suffer prejudice and there was "no indication that the [IJ's] actions amount[ed] to a violation of due process." *Id.* It did so, however, without ever addressing Tinoco Acevedo's argument that he was entitled to a new hearing because the IJ's behavior failed to meet the high standard expected of IJs under *Matter of Y-S-L-C-*. Indeed, the BIA affirmed the IJ's denial of relief without even a citation referencing *Matter of Y-S-L-C-*.

II.

We review both the constitutional claim and the question of law de novo. *See Obioha v. Gonzales*, 431 F.3d 400, 409 (4th Cir. 2005). When, as here, the BIA provides its own reasoning to affirm the IJ's findings, our review is limited to the BIA's decision. *See Cabrera v. Garland*, 21 F.4th 878, 883 (4th Cir. 2022). And absent an abuse of discretion, we defer to the BIA's interpretation of its own governing regulations. *See Turkson v. Holder*, 667 F.3d 523, 527 (4th Cir. 2012).

7

III.

On appeal, Tinoco Acevedo challenges the BIA's decision for two reasons. First, Tinoco Acevedo argues that the BIA erred when it failed to address whether the IJ satisfied the high standards expected of IJs under *Matter of Y-S-L-C-* and, instead, declined to remand, finding Tinoco Acevedo did not establish a due process violation. *See* Opening Br. at 21–28. Because the BIA failed to apply, or even address, *Matter of Y-S-L-C-*, Tinoco Acevedo urges us to remand so that the BIA may apply its own precedent. In the alternative, Tinoco Acevedo argues that if a due process violation must be established to obtain a new hearing, we should reverse the BIA's decision because the IJ's actions, both during and following the hearing, violated his right to a fair hearing before an impartial decisionmaker. *See id.* at 28–35. Because we agree that the BIA failed to address *Matter of Y-S-L-C-* altogether, we remand this case so that it may do so in the first instance. Therefore, we need not reach Tinoco Acevedo's constitutional claim.[4]

A.

We begin with the threshold question of jurisdiction. Under 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction to review final orders of removal against noncitizens who are "removable by reason of having committed a criminal offense covered in [8 U.S.C.

---

[4] While we do not reach Tinoco Acevedo's due-process claim, we recognize that "due process requires a 'neutral and detached judge *in the first instance*.'" *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 617 (1993) (emphasis added) (quoting *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972)). A biased hearing-level procedure may not "be deemed constitutionally acceptable simply because the [agency] *eventually* offers a defendant an impartial adjudication" on appeal. *Ward*, 409 U.S. at 61 (emphasis added); *see also Concrete Pipe*, 508 U.S. at 618 ("Even appeal and a trial *de novo* will not cure a failure to provide a neutral and detached adjudicator.").

§] 1182(a)(2)." We also lack jurisdiction to review the denial of a discretionary form of relief such as cancellation of removal. 8 U.S.C. § 1252(a)(2)(B)(i). All the same, we retain jurisdiction over constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D); *see Gonzalez Galvan v. Garland*, 6 F.4th 552, 558 (4th Cir. 2021). Because Tinoco Acevedo has raised both such challenges here, we have jurisdiction to consider his petition for review.

Along with satisfying jurisdictional requirements, Tinoco Acevedo must also have exhausted all available administrative remedies. 8 U.S.C. § 1252(d)(1). As we have explained, "[t]he exhaustion requirement 'bars consideration of general issues that were not raised below,' and appellants 'should not be penalized by evaluating form over substance where their arguments before the Board in essence raised' the claim at issue." *Perez Vasquez v. Garland*, 4 F.4th 213, 228 (4th Cir. 2021) (emphasis omitted) (quoting *Atemnkeng v. Barr*, 948 F.3d 231, 240–41 (4th Cir. 2020)). [5]

Tinoco Acevedo presented the BIA with two general issues. His primary challenge was that the BIA should reverse the IJ's denial of his application for cancellation of removal. As a secondary challenge, Tinoco Acevedo argued that the BIA should remand

---

[5] Neither party addressed the issue of exhaustion in their briefs. At oral argument, however, Tinoco Acevedo's counsel responded to the panel's questions concerning whether he exhausted the *Matter of Y-S-L-C-* claim. Oral Argument at 7:40–8:55, 31:48–35:06, 36:35–38:48, *Tinoco Acevedo v. Garland* (4th Cir. May 4, 2021) (No. 20-2048), https://www.ca4.uscourts.gov/OAarchive/mp3/20-2048-20220504.mp3. Pointing to his brief submitted to the BIA, Tinoco Acevedo's counsel contended that he exhausted the claim by presenting two arguments for why his case should be remanded to a new IJ and citing to *Matter of Y-S-L-C-* in support. In response, the government disagreed and argued that Tinoco Acevedo did not sufficiently raise this issue before the BIA. *Id.* at 15:00–21:52. On May 9, 2022, following oral argument, Tinoco Acevedo submitted a notice of supplemental authority pursuant to Federal Rule of Appellate Procedure 28(j) to further support his exhaustion argument. ECF No. 44.

the record to a different IJ because the initial IJ's conduct failed to meet "the high standards expected of [IJs,]" and suggested that the IJ could not serve as an impartial decisionmaker.[6] A.R. 48; *see* A.R. 46–49 (quoting *Matter of Y-S-L-C-*, 26 I. & N. Dec. at 691). In support of his second challenge, Tinoco Acevedo began his argument by citing to *Matter of Y-S-L-C-*. A.R. 47. When explaining why the IJ's behavior indicated that "she could not impartially adjudicate [Tinoco Acevedo's] case," Tinoco Acevedo inserted a footnote detailing the IJ's remarks concerning Tinoco Acevedo's Spanish fluency. A.R. 47 n.4. Characterizing these remarks as "highly inappropriate," Tinoco Acevedo argued that the IJ's "outburst [was] sufficient on its own to warrant remand to a new [IJ]." *Id.* Then, in the text of his brief, Tinoco Acevedo cited *Matter of Y-S-L-C-* again to argue that the IJ's conduct following the hearing—seeking and relying on the police report—was "reason alone" to find the IJ failed to meet the high standard expected of IJs. A.R. 48.

Although Tinoco Acevedo's brief to the BIA makes clear that his primary focus was to persuade the BIA to reverse the IJ's decision, we note that it also shows he presented an alternative argument seeking remand before a new IJ under *Matter of Y-S-L-C-*. We thus find that Tinoco Acevedo sufficiently exhausted his claim that this case should be remanded to a new IJ under *Matter of Y-S-L-C-*.

---

[6] A short memorandum addressed to the IJ was attached to the IJ's written decision. This memorandum was from the permanent attorney advisor with the Executive Office of Immigration Review—Brooke McGee—and stated, "[a]s we discussed, I focused on the police report in order to deny on discretion. I also included that despite his genuine rehabilitation, he has the possibility of relapsing as well." A.R. 51. In arguing that his case should be remanded, Tinoco Acevedo also specified that McGee should no longer play a role in his case.

B.

Turning to the merits of Tinoco Acevedo's first argument, we begin by considering the BIA's decision in *Matter of Y-S-L-C-*. In *Matter of Y-S-L-C-*, a three-member BIA panel vacated and remanded an IJ's decision denying a fifteen-year-old applicant's request for withholding of removal under the Convention Against Torture. 26 I. & N. Dec. at 691–92. During the merits hearing before the IJ, counsel questioned the applicant about the applicant's experience with gang violence in his home country. When asked whether this experience had resulted in psychological issues or nightmares, the IJ interrupted, stating that the applicant would need to be qualified as an expert witness to answer. *Id.* at 689. The IJ proceeded to ask the fifteen-year-old applicant questions related to his level of education and whether he had lectured on psychology on a professional level. *Id.* According to the IJ, these questions were necessary to determine whether the applicant could "testify as to psychological problems." *Id.* Concluding that the applicant did not qualify as an expert witness, the IJ stated that the applicant could only testify as to whether he experienced certain difficulties—without discussing any psychological impact—if the applicant "stipulate[d] that he ha[d] never lectured at the university or professional level, . . . written any professional journals, . . . [or] had any training on psychology." *Id.*

As relevant to Tinoco Acevedo's argument, the BIA in *Matter of Y-S-L-C-* vacated and remanded the IJ's decision after determining that it could not "condone the [IJ's]

11

treatment of the respondent through this questioning."[7]  26 I. & N. Dec. at 690 ("Courts have stressed that a respondent in immigration proceedings should expect dignity, respect, courtesy, and fairness in a hearing before an [IJ].").  Not only can an IJ's "bullying or hostile" conduct "have a chilling effect on a respondent's testimony and thereby limit his or her ability to fully develop the facts of the claim," but the BIA further explained that this behavior also "creates the appearance that an [IJ] has abandoned his or her role as a neutral fact-finder and raises a question whether the respondent was given a full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf." *Id.* at 690–91 (internal quotation marks omitted).  Finding it "difficult to view" the exchange between the fifteen-year-old applicant and the IJ "as anything other than belittling to the [applicant] and insensitive to the difficult matters about which counsel was trying to question him"—the BIA "conclude[d] that [the] hearing was not conducted in a manner that meets the high standards expected of [IJs]." *Id.* at 691.  Without discussing the IJ's decision denying relief on the merits, the BIA found it "appropriate" to vacate and remand the record to a new IJ. *Id.* at 691–92.

---

[7] The BIA in *Matter of Y-S-L-C-* also underlined that evidence presented in immigration proceedings need only be probative and fundamentally fair to be deemed admissible.  26 I. & N. Dec. at 690.  While the Federal Rules of Evidence are non-binding in immigration proceedings, the BIA explained it is helpful to refer to these rules because evidence found admissible under the Federal Rules is likely to "comport[] with due process." *Id.*  Because the applicant in *Matter of Y-S-L-C-* was only asked to discuss his personal experience, his testimony was probative, fundamentally fair, and in compliance with the Federal Rules. *Id.*

12

C.

Tinoco Acevedo interprets *Matter of Y-S-L-C-* as precedent under which a noncitizen in removal proceedings is entitled to a new hearing before a new IJ when the initial IJ fails to conduct the initial hearing "in a manner that meets the high standards expected of [IJs]." Opening Br. at 21 (citing 26 I. & N. Dec. at 691). As applied here, Tinoco Acevedo argues that the IJ failed to meet this high standard by: (1) "belittl[ing] [Tinoco Acevedo] and his attorney when [Tinoco Acevedo] was testifying about his diminished fluency in Spanish"; and (2) seeking and relying on the police report that was not submitted into the record. Opening Br. at 25–26.

Disagreeing with this interpretation, the government understands the BIA's decision to remand in *Matter of Y-S-L-C-* as contingent upon a finding that the IJ's behavior violated the applicant's right to due process. Because the government argues that Tinoco Acevedo did not—and cannot—establish that the IJ's behavior violated his right to due process, it concludes that *Matter of Y-S-L-C-* is inapplicable and the BIA had no reason to address it. Moreover, the government contends that differences such as Tinoco Acevedo's adult age, and the fact that the IJ's remarks were mainly directed at his counsel rather than him, distinguish this case from *Matter of Y-S-L-C-*. As for the police record, the government responds that the IJ's use of it is of no consequence because the BIA relied on Tinoco Acevedo's other criminal convictions to affirm the IJ's denial of relief as a matter of discretion.

At bottom, we find that the government's analysis glosses over one key point: the BIA in *Matter of Y-S-L-C-* never definitively concluded that—or fully analyzed whether—the IJ's actions constituted a due process violation. The BIA in *Matter of Y-S-L-C-* never

13

specified that its decision to remand was tethered to a finding that the IJ's conduct violated the applicant's right to due process, and we decline to adopt such an interpretation now.

A close review of *Matter of Y-S-L-C-* reveals that the BIA did not apply the due process framework of analysis when discussing the IJ's conduct and its impact on the fifteen-year-old applicant. To find that a petitioner's right to due process was violated, courts analyze the conduct in two steps and determine whether the petitioner established "two closely linked elements." *Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008). First, the petitioner must show "that a defect in the proceeding rendered it fundamentally unfair," requiring "consideration of whether, prospectively, a particular defect could undermine a proceeding." *Id.* Second, the petitioner must show "that the defect prejudiced the outcome of the case," requiring "consideration of whether the defect, in retrospect in a specific case, was 'likely to impact the results of the proceedings.'" *Id.* (quoting *Rusu v. INS*, 296 F.3d 316, 320–21 (4th Cir. 2002)).

While some aspects of *Matter of Y-S-L-C-* could be interpreted as discussing a due process violation, the decision is silent as to the prejudice finding. The prejudice prong is one of the two essential components of the due process framework, and it is crucial to establishing a due process violation. Therefore, the BIA's decision *not* to state that the IJ's conduct prejudiced the fifteen-year-old applicant supports Tinoco Acevedo's interpretation of the *Matter of Y-S-L-C-* holding as independent of a due process violation. *Cf. Diop v. Lynch*, 807 F.3d 70, 74–75 (4th Cir. 2015) (explaining that an applicant "must prove both" that the alleged defect rendered the proceeding fundamentally unfair and that the defect prejudiced the case). To be sure, the BIA in *Matter of Y-S-L-C-* emphasized both that

14

applicants are entitled to a full and fair hearing as a matter of due process and that an IJ's hostile behavior toward an applicant *could* be found to constitute a due process violation. 26 I. & N. Dec. at 690–91. But rather than apply that analysis to explain how the IJ's behavior *did* in fact prejudice the applicant—and therefore violated his right to due process—the BIA simply concluded that the "hearing was not conducted in a manner that meets the high standards expected of [IJs]." *Id.* at 691.

We do note that the BIA in *Matter of Y-S-L-C-* included citations to due process cases when discussing the IJ's conduct. But these citations alone cannot replace a clear statement finding that the IJ violated the applicant's right to due process, nor do they explain the absence of the prejudice analysis. *Cf. Nken v. Holder*, 585 F.3d 818, 822 (4th Cir. 2009) ("Established precedent dictates that a court may not guess at what an agency meant to say, but must instead restrict itself to what the agency actually did say."). And while the government is correct that no circuit court has yet interpreted *Matter of Y-S-L-C-* as entitling a noncitizen to a new hearing outside the due process context, our three sister circuits that have addressed *Matter of Y-S-L-C-* have only done so by citing to the case without analysis. *See Machado v. Att'y Gen.*, No. 20-14809, 2022 WL 698439, at *3 (11th Cir. Mar. 9, 2022) (citing *Matter of Y-S-L-C-* to support its finding that the Federal Rules of Evidence are inapplicable in the immigration context); *Jama v. Wilkinson*, 990 F.3d 1109, 1116 (8th Cir. 2021) (same); *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 211 n.1, 226 (3d Cir. 2017) (citing *Matter of Y-S-L-C-* to assess a due process claim); *Cruz v. Att'y Gen.*, 746 F. App'x 869, 871 (11th Cir. 2018) (citing *Matter of Y-S-L-C-* when analyzing a due process claim).

15

Rather than opine as to the exact grounds on which the BIA decided that the applicant was entitled to a new hearing before a new IJ in *Matter of Y-S-L-C-*, we remand for the BIA to interpret its precedent and address Tinoco Acevedo's argument in the first instance. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."); *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008) ("What is generally true in administrative law remains true here: An agency's interpretation of its own precedents receives considerable deference[.]").

IV.

For the foregoing reasons, we apply the ordinary remand rule to allow the BIA to address its own precedent in the first instance. Therefore, we grant Tinoco Acevedo's petition for review, vacate the order of removal, and remand for the BIA to consider whether Tinoco Acevedo is entitled to a new hearing before a different IJ because the initial IJ's conduct—both during and following the hearing—failed to satisfy the high standard expected of IJs under *Matter of Y-S-L-C-*.

*PETITION FOR REVIEW GRANTED; VACATED AND REMANDED*