**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1281

DAVID ANNOR,

       Petitioner,

  v.

MERRICK B. GARLAND, Attorney General,

       Respondent.

------------------------------

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION; REFUGEE AND
IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES,

       Amici Supporting Petitioner.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: January 23, 2024               Decided: March 15, 2024

Before HEYTENS and BENJAMIN, Circuit Judges, and MOTZ, Senior Circuit Judge.

Petition for review granted; vacated and remanded by published opinion. Senior Judge
Motz wrote the opinion, in which Judge Heytens and Judge Benjamin joined.

**ARGUED:** Benjamin Ross Winograd, IMMIGRANT & REFUGEE APPELLATE
CENTER, LLC, Alexandria, Virginia, for Petitioner. Robert Michael Stalzer, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:**

Adam N. Crandell, ELDRIDGE, NACHTMAN & CRANDELL LLC, Baltimore, Maryland, for Petitioner.  Brian Boynton, Principal Deputy Assistant Attorney General, Stephen J. Flynn, Assistant Director, Kathryn M. McKinney, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.   Samantha Hsieh, Peter Alfredson, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C.; Keith Armstrong, Vanessa Rivas, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES (RAICES), San Antonio, Texas, for Amici Curiae.

―――――――

DIANA GRIBBON MOTZ, Senior Circuit Judge:

David Annor, a citizen of Ghana and a lawful permanent resident of the United States, used his business to funnel the proceeds of a "romance fraud scheme" to militiamen in Ghana. After Annor pled guilty to one count of conspiracy to commit money laundering, the Department of Homeland Security ("DHS") placed him in removal proceedings, where he applied for withholding of removal and deferral under the Convention Against Torture ("CAT"). An Immigration Judge ("IJ") denied relief, and the Board of Immigration Appeals ("BIA") affirmed, holding that Annor's money laundering conspiracy conviction constituted a "particularly serious crime" barring withholding of removal. *See* 8 U.S.C. § 1231(b)(3)(B)(ii). But in so holding, the BIA misapplied its own precedent, both by relying on the elements of the wrong statute and by failing to assess whether the nature of Annor's offense indicates that he presents a danger to the community. Accordingly, we vacate the BIA's decision and remand for further proceedings.

I.

In 2014, when Annor's father became a United States citizen, Annor immigrated to the United States as a lawful permanent resident. His family settled in Gaithersburg, Maryland, where Annor attended community college to study cybersecurity, and worked as a residential counselor at a group home for adults and children with autism. Annor also founded Ravid Enterprises, a business that purchased cars at auction and resold them in Ghana.

3

In 2017, Steven Antwi, who had attended school with Annor in Ghana and was now living in Ohio, asked Annor to funnel money through Wells Fargo bank accounts held by Ravid Enterprises and Annor personally. Annor agreed to do so. Over the next few years, Antwi and Annor handled money procured through a "romance fraud scheme" — in which members of the conspiracy made false romantic advances online to induce victims, many of whom were isolated or elderly, to send the conspirators money. Over a period of three years, the conspiracy swindled more than $6.2 million from over 200 victims across the United States. For his part, Annor did not recruit or interact with any victims. Instead, he acted as a middleman, accepting the proceeds of the scheme into his bank accounts before sending these proceeds to conspirators in Ghana. Annor helped launder just over $3.9 million through his accounts, and received a 10% cut of the proceeds.

In 2020, federal agents arrested Annor and charged him with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Annor immediately cooperated with the Government, made two factual proffers, and testified against Antwi. In May 2021, Annor pled guilty, admitting that he: (1) with "at least one other person entered into . . . an agreement to commit [a] substantive money laundering offense[]"; (2) "knew that the money laundering proceeds had been derived from an illegal activity"; and (3) "knowingly and willfully became a member of that conspiracy." The United States Sentencing Guidelines recommended a sentence of 70 to 87 months, but the Government requested a downward variance to 51 to 63 months in recognition of Annor's "substantial assistance" in the investigation of the scheme. The district court varied even further, and sentenced Annor to 36 months' imprisonment.

4

In 2022, DHS charged Annor with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) as a noncitizen convicted of an aggravated felony. Annor conceded this charge, and applied for withholding of removal and CAT relief. He based his claims of persecution and torture on his fear of retaliation by the Ghana-based "land guards," a mercenary militia that had orchestrated the romance fraud scheme and allegedly knew of Annor's cooperation with United States prosecutors.

On July 13, 2022, an IJ held a remote hearing,[1] at which Annor testified about his involvement in the scheme and his fear of persecution. Annor maintained that he had no contact with the victims, and that the land guards had threatened him and his family on multiple occasions upon discovering discrepancies with the funds. He testified that the media had widely reported on his criminal case over the internet, and that "everybody in the Ghanian community . . . got wind of what was going on." He also explained that three high-ranking land guards — Aminu Ahmed, Ibrahim Amadu, and Bassi Abdul King — suspected him of cooperating with the Government, and would retaliate against him upon his return to Ghana. And he claimed that the Ghanian police would not be willing or able to protect him.

---

[1] The parties discuss venue at length in their briefs. We have held that "[v]enue under § 1252(b)(2) depends on the location of the Immigration Judge." *Herrera-Alcala v. Garland*, 39 F.4th 233, 241, 243 (4th Cir. 2022). Because the IJ was assigned to Baltimore, Maryland, but conducted the hearing remotely from York, Pennsylvania, the parties dispute how to decide where the IJ was "located" during these proceedings. *Cf. id.* at 241 n.4 (declining to address how venue should be determined in an immigration case where the IJ presided remotely from outside his "assigned work location"). But as the parties ultimately "agree that venue here is proper," Resp. Br. 12, and the venue provision at 8 U.S.C. § 1252(b)(2) is nonjurisdictional, we need not address this issue.

Following the hearing, the IJ issued an oral opinion denying relief, finding that Annor's conviction was a "particularly serious crime" barring withholding of removal. *See* 8 U.S.C. § 1231(b)(3)(B)(ii). The IJ recognized that Annor's conviction was "not a *per se* particularly serious crime" and was "not violent by nature." JA 40 (emphasis added). But the IJ nonetheless concluded that under *Matter of N-A-M-*, 24 I. & N. Dec. 336 (BIA 2007), the offense fell "within the ambit of it being a particularly serious crime due to the serious nature of the offense, the amount of loss, the vulnerable group of individuals that were targeted, and the fact that it was a federal conviction." JA 40–41. The IJ then found that the amount of loss, the length of the scheme, and its effects on multiple, vulnerable victims demonstrated that Annor's crime was, in fact, particularly serious. In the alternative, the IJ denied relief on the merits.

Annor appealed, and the BIA affirmed. The BIA found that the elements of 18 U.S.C. § 1956(h), "which include knowingly engaging or attempting to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, potentially bring it into a category of particularly serious crimes." JA 3. The BIA then affirmed the IJ's findings on "the facts and circumstances of the offense," highlighting "the nature of the offense, the substantial amount of money involved in the criminal scheme, and the level of deceit involved." JA 3–4. The BIA declined to reach the IJ's alternative finding that Annor was not entitled to withholding of removal on the merits; but it affirmed the IJ's denial of deferral of removal under CAT.

Annor timely filed this petition for review.

6

II.

Annor argues that the BIA erred in determining that his conviction for conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), constitutes a particularly serious crime barring withholding of removal. On review of a particularly serious crime finding, we retain jurisdiction to consider colorable constitutional claims and legal issues, 8 U.S.C. § 1252(a)(2)(D), which we review de novo, *Tinoco Acevedo v. Garland*, 44 F.4th 241, 246 (4th Cir. 2022). We may reverse when the BIA fails to properly apply its own precedent. *Id.* at 250. And where, as here, "the BIA adopts and affirms the IJ's decision and supplements it with its own opinion, we review both decisions." *Nolasco v. Garland*, 7 F.4th 180, 186 (4th Cir. 2021) (cleaned up).

A noncitizen is ineligible for withholding of removal if, "having been convicted by a final judgment of a particularly serious crime, [he] is a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii). Under the Immigration and Nationality Act ("INA"), any "aggravated felony . . . for which the [noncitizen] has been sentenced to an aggregate term of imprisonment of at least five years" constitutes a *per se* particularly serious crime. *Hernandez-Nolasco v. Lynch*, 807 F.3d 95, 98 (4th Cir. 2015) (quoting 8 U.S.C. § 1231(b)(3)(B)(iv)).[2] For all other offenses, "adjudicators must determine on a

---

[2] The INA defines "aggravated felony" to include "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M). Annor does not dispute that his money laundering conspiracy conviction, which involved over $6 million in loss to the victims, qualifies as an aggravated felony. But because Annor received a sentence of three years' imprisonment, his offense is not *per se* particularly serious.

7

case-by-case basis whether a conviction is for a particularly serious crime," *In re B-Z-R-*, 28 I. & N. Dec. 563, 563 (A.G. 2022), after considering the following factors:

> [1] the nature of the conviction, [2] the circumstances and underlying facts of the conviction, [3] the type of sentence imposed, and, most importantly, [4] whether the type and circumstances of the crime indicate that the [noncitizen] will be a danger to the community.

*Gao v. Holder*, 595 F.3d 549, 557 (4th Cir. 2010) (quoting *In re Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982)).  The BIA, assertedly applying this framework, held that Annor's conviction for conspiracy to commit money laundering constitutes a particularly serious crime.  Annor asserts that the BIA committed three legal errors in doing so.  With respect to two of the alleged errors, we agree.

## A.

First, both the IJ and the BIA failed to properly analyze the elements of a conspiracy to commit money laundering.  In its established precedent, *Matter of N-A-M-*, the BIA stated that "the individual facts and circumstances of the offense are of no consequence" unless "the elements of the offense . . . potentially bring the crime into a category of particularly serious crimes." 24 I. & N. Dec. at 342.  As our sister circuits have held, *N-A-M-* requires adjudicators to conduct a two-step analysis, asking: (1) whether the elements of the offense bring it "within the ambit of a particularly serious crime"; and if so, (2) whether "the individual facts and circumstances" confirm that the offense is particularly serious.  *See, e.g.*, *Ojo v. Garland*, 25 F.4th 152, 165, 167 (2d Cir. 2022); *Luziga v. Att'y Gen.*, 937 F.3d 244, 253 (3d Cir. 2019); *see also Samba v. Lynch*, 641 F. App'x 376, 381 (5th Cir. 2016); *Cazares-Zandre v. U.S. Att'y Gen.*, 791 F. App'x 96, 102 (11th Cir. 2019).

8

Accordingly, adjudicators must begin their analysis by evaluating the elements of the noncitizen's offense as a threshold matter. Only if those elements suggest the crime may be particularly serious can the adjudicator proceed to evaluate the facts of the case.

At least two courts have vacated and remanded BIA decisions in cases where the agency failed to properly evaluate the elements of the offense at the first step of the *N-A-M-* inquiry. *See Ojo*, 25 F.4th at 165; *Luziga*, 937 F.3d at 254. In *Luziga*, the Third Circuit vacated a particularly serious crime finding after the IJ "failed to first consider the elements of [the] offense," and the BIA "stated that it would consider the 'elements' of Luziga's offense, [but] listed as 'elements' specific offense characteristics such as loss amount." 937 F.3d at 253–54. And in *Ojo*, the Second Circuit vacated a particularly serious crime finding where the IJ merely observed that the offense at issue was "a crime against persons" without considering its elements at all, and the BIA affirmed that finding without further analysis. 25 F.4th at 165–66. In both cases, the court recognized that *N-A-M-* imposes a specific two-step framework, and held that the BIA failed to follow that framework when it did not correctly evaluate the elements of the offense at the first stage of that process. *See Luziga*, 937 F.3d at 254; *Ojo*, 25 F.4th at 167–68.

In the case at hand, both the BIA and the IJ failed to correctly apply *N-A-M-*. First, the IJ improperly "listed as 'elements' specific offense characteristics such as loss amount." *Luziga*, 937 F.3d at 254. In his analysis, the IJ found that Annor's conviction for conspiracy to commit money laundering "meets the threshold requirements of . . . falling within the ambit of it being a particularly serious crime due to the serious nature of the offense, the amount of loss, the vulnerable group of individuals that were targeted, and the fact that it

9

was a federal conviction." JA 41. But *N-A-M-* instructs that an IJ may not consider such facts unless and until the IJ has determined that the elements of the offense suggest it may be a particularly serious crime. *See* 24 I. & N. Dec. at 342 ("If the elements of the offense do not potentially bring the crime into a category of particularly serious crimes, the individual facts and circumstances are of no consequence").

For its part, the BIA did not improperly consider the facts of the case at the first step of the *N-A-M-* pipeline — instead, it analyzed the elements of the wrong statute altogether. Annor pled guilty to conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). That statute requires the government to establish:

> (1) the existence of an agreement between two or more persons to commit one or more . . . substantive money laundering offenses;
> (2) that the defendant knew that the money laundering proceeds had been derived from an illegal activity; and
> (3) the defendant knowingly and voluntarily became part of the conspiracy.

*United States v. Ravenell*, 66 F.4th 472, 486 (4th Cir. 2023) (quoting *United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010)). But in its decision, the BIA instead stated that the elements of this statute "include knowingly engaging or attempting to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." JA 3. Those are the elements of *substantive* money laundering, in violation of 18 U.S.C. § 1957 — not *conspiracy* to commit money laundering, in violation of 18 U.S.C. § 1956(h).

In relying on the wrong statute, the BIA substituted the elements of a "qualitatively different" crime than Annor's offense of conviction. *See Whitfield v. United States*, 543 U.S. 209, 217 (2005). A conviction for money laundering under § 1957 requires proof that

10

"the defendant knowingly participated in a monetary transaction involving criminally derived proceeds," *United States v. Cherry*, 330 F.3d, 658, 668 (4th Cir. 2003) (cleaned up), while a money-laundering conspiracy under § 1956(h) "require[s] nothing more than an agreement to launder money," *United States v. Ojedokun*, 16 F.4th 1091, 1105 (4th Cir. 2021). Without question, there is a significant difference between agreeing to an illicit monetary transaction and personally carrying it out. Because we "must judge the propriety of agency action solely by the grounds invoked by the agency," *Calcutt v. FDIC*, 598 U.S 623, 624 (2023) (cleaned up) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)), we may not decide for ourselves whether the correct elements of a money-laundering conspiracy fall "within the ambit of a particularly serious crime," *see N-A-M-*, 24 I. & N. Dec. at 342. For these reasons, we vacate the BIA's decision and remand so that the agency may conduct this analysis in the first instance.

The Government makes three attempts to resist this common-sense conclusion — arguing alternatively that the BIA did not err, that its error was harmless, and that it was not required to list the elements of a § 1956(h) conspiracy at all. All three arguments fail.

First, the Government argues that the BIA committed no error, as it "properly stated that the elements [of § 1956(h) conspiracy] 'include' the elements of the substantive offense of money laundering." Gov't Br. 31. But this is wrong. While a money laundering conspiracy requires an agreement to commit a "substantive money laundering offense[]," *Green*, 599 F.3d at 371, it does not require proof that the defendant committed any overt acts in furtherance of that end, *Whitfield*, 543 U.S. at 219; *United States v. Alerre*, 430 F.3d 681, 694 (4th Cir. 2005) ("[T]he prosecution was not required to prove that the defendants

11

had committed . . . money laundering in order to convict them of conspiring to do so."). We have never held that a conspiracy includes all of the elements of the completed offense that is its object, and we decline to do so today. In plain terms, then, the BIA improperly substituted an offense that requires overt conduct for one that does not.

Second, the Government argues that *N-A-M-* does not mandate a two-step analysis, and so the BIA's mixup must be harmless. But the BIA has consistently interpreted *N-A-M-* as requiring a two-step analysis, and did so throughout Annor's administrative appeal. That is because *N-A-M-* clearly provides that the "individual facts and circumstances" of the offense "are of no consequence" if the elements do not qualify — instructing that the elements must be evaluated *before* the facts may be considered. 24 I. & N. Dec. at 342. And the BIA has repeatedly reaffirmed this view, permitting adjudicators to consider the facts of a noncitizen's offense only after first finding that its elements "potentially bring it within the ambit of a particularly serious crime." *E.g.*, *Matter of T-C-A-*, 28 I. & N. Dec. 472, 480 (BIA 2022); *Matter of D-L-S-*, 28 I. & N. Dec. 568, 577 (BIA 2022). Indeed, the BIA applied the *N-A-M-* two-step framework in this very case; it just did so incorrectly.

Finally, the Government relies on the Ninth Circuit's decision in *Bare v. Barr* to argue that the BIA need not elevate "form over substance" and articulate "an explicit consideration of the elements of the offense." 975 F.3d 952, 963 (9th Cir. 2020). In *Bare*, a jury convicted the petitioner of possession of a firearm by a convicted felon, and DHS placed him in removal proceedings. *Id.* at 959. The BIA found that this conviction was a particularly serious crime without expressly listing its elements. *Id.* at 962. The petitioner sought review, citing a failure to follow *N-A-M-*, and the Ninth Circuit denied his petition.

*Id.* The court reasoned that firearm possession "is a common federal crime with simple and straightforward elements" that are "well-known," and noted that the BIA "referenced facts that went directly to each element" in its analysis. *Id.* at 962–63. It also contrasted *Luziga* as a case where the IJ "made no reference to the elements" and the BIA improperly "listed as 'elements' specific offense characteristics such as loss amount." *Id.* at 963 (quoting *Luziga*, 927 F.3d at 253–54).

*Bare* does not stand for the proposition that the BIA need not analyze the elements of the noncitizen's offense — only that the BIA need not formalistically list those elements when they are immediately clear from the nature of the crime. This is not such a case. Unlike firearm possession, the elements of conspiracy to commit money laundering are not, as the BIA's opinion illustrates, readily apparent. And the BIA did not evaluate those elements implicitly in its analysis — to the contrary, it listed factors which "were not elements of the offense." *Id.* at 963; *see Ojo*, 25 F.4th at 168 n.12 (distinguishing *Bare* by observing that the IJ in *Ojo* "misapprehended the elements [of the noncitizen's offense]"). Accordingly, *Bare* has no bearing in this case.

## B.

The BIA also erred at the second step of *N-A-M-* when it failed to consider whether Annor's money laundering conspiracy conviction indicates that he poses a danger to the community. As noted above, once the elements of an offense bring it within the ambit of a particularly serious crime, adjudicators must examine the following factors:

> [1] the nature of the conviction, [2] the circumstances and underlying facts of the conviction, [3] the type of sentence imposed, and, most importantly,

13

[4] whether the type and circumstances of the crime indicate that the [noncitizen] will be a danger to the community.

*Gao*, 595 F.3d at 557 (quoting *Frentescu*, 18 I. & N. Dec. at 247). Among these factors, "the essential key in determining whether an offense is particularly serious is whether it indicates that the respondent poses a danger to the community." *B-Z-R-*, 28 I. & N. Dec. at 563–64 (cleaned up); *accord Gao*, 595 F.3d at 557; *see also Yousefi v. INS*, 260 F.3d 318, 329–30 (4th Cir. 2001) (per curiam). The BIA entirely failed to consider that "essential key" in its analysis of Annor's conviction.

The Government argues that the BIA need not consider dangerousness at all. Of course, BIA precedent and our caselaw provide that "once the particularly serious crime determination is made, the [noncitizen] is ineligible for withholding without a separate finding on dangerousness." *Gao*, 595 F.3d at 555 n.1 (quoting *Kofa v. INS*, 60 F.3d 1084, 1088 (4th Cir. 1995)); *see also Matter of Carballe*, 19 I. & N. Dec. 357, 360 (BIA 1986). That is because any noncitizen who has been convicted of a particularly serious crime is "*necessarily* found to be a danger to the community." *Velerio-Ramirez v. Lynch*, 808 F.3d 111, 115 n.7 (4th Cir. 2015) (cleaned up) (emphasis added). Thus, "there is no statutory requirement for a separate determination of dangerousness focusing on the likelihood of future serious misconduct on the part of the [noncitizen]." *Gomez-Sanchez v. Sessions*, 892 F.3d 985, 991 (9th Cir. 2018) (cleaned up).

But while the BIA need not separately evaluate the characteristics of the noncitizen to determine whether he is a danger to the community, it must consider whether the nature of the noncitizen's *crime* suggests as much. As the BIA explained in *Matter of Carballe*:

14

> In determining whether [a crime is particularly serious], the essential key is whether the nature of the crime is one which indicates that the [noncitizen] poses a danger to the community. . . . The focus here is on the crime that was committed. If it is determined that the crime was a 'particularly serious' one, the question of whether the [noncitizen] is a danger to the community of the United States is answered in the affirmative. We do not find that there is a statutory requirement for a separate determination of dangerousness focusing on the likelihood of future serious misconduct on the part of the [noncitizen].

19 I. & N. Dec. at 361; *see Valerio-Ramirez v. Sessions*, 882 F.3d 289, 296 (1st Cir. 2018); *Tian v. Holder*, 576 F.3d 890, 897 (8th Cir. 2009) ("The 'proper focus,' according to the BIA, is on the nature of the crime and not the likelihood of future serious misconduct." (quoting *Frentescu*, 24 I. & N. Dec. at 342)). It follows that danger remains the key component of the particularly serious crime analysis, even if it is not a standalone inquiry. Thus, in determining whether a given offense is particularly serious, the BIA must consider whether the nature of the offense indicates that the noncitizen is a danger to the community. Once that determination is made, the BIA need not separately evaluate the personal history and characteristics of the offender.

Here, neither the BIA nor the IJ evaluated "whether the type and circumstances of the crime indicate that [Annor] will be a danger to the community." *Gao*, 595 F.3d at 557 (cleaned up). The IJ's statement of the legal standard omitted this essential factor entirely; instead, the IJ stated only that "the court considers the nature of the conviction, the sentence imposed, and the circumstances and underlying facts of the conviction." JA 50. And the BIA affirmed the IJ's incomplete analysis without any additional evaluation of this factor. Because the BIA found that Annor had been convicted of a particularly serious crime without considering the "essential key" to that analysis, *B-Z-R-*, 28 I. & N. Dec. at 563–64,

15

we hold that it failed to apply the correct legal standard, and "we remand this case so that it may do so in the first instance." *Tinoco Acevedo*, 44 F.4th at 246.

C.

Annor also argues that the agency erred by considering "misconduct beyond the offense to which [he] pled guilty" — namely, the fraudulent actions of his co-conspirators. Pet'r's Br. 34. This argument fails. At step two of the *N-A-M-* framework, adjudicators may consider "all reliable information . . . including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction." *N-A-M-*, 24 I. & N. Dec. at 342; *see also Matter of F-R-A-*, 28 I. & N. Dec. 460, 468 (BIA 2022) (confirming that, once the agency evaluates the nature of the offense of conviction, it may "consider all reliable information in determining whether the respondent's crime is particularly serious"). Once the agency passed through the step-one gateway, and found that Annor's offense fell within the ambit of a particularly serious crime, it had broad latitude to consider all reliable information relevant to Annor's conviction.

Annor insists the BIA erred by referencing the level of deceit, the amount of loss, and the vulnerable victims of the romance fraud scheme — facts pertaining to substantive crimes that Annor did not commit. In *Yousefi*, we held that the BIA erred by considering a dismissed assault-with-intent-to-kill count in evaluating whether a noncitizen's assault-with-dangerous-weapon conviction qualified as a particularly serious crime. 260 F.3d at 329–30. But here, Annor continued to support the conspiracy for more than two years after learning of the source of its proceeds. Accordingly, this is not a situation where the BIA improperly relied on an uncharged crime or a dismissed count — to the contrary, it properly

16

considered the scope and impact of the fraudulent scheme Annor knowingly facilitated. *See, e.g.*, *Matter of G-G-S-*, 26 I&N Dec. 339, 343 (BIA 2014) ("The presence or absence of harm to the victim is also a pertinent factor in evaluating whether a crime was particularly serious."), *vacated on other grounds*, *Gomez-Sanchez v. Sessions*, 892 F.3d 985, 996–97 (9th Cir. 2018); *accord F-R-A-*, 28 I. & N. Dec. at 460 ("[O]ffenses against persons are more likely to be categorized as particularly serious crimes."); *Matter of R-A-M-*, 25 I. & N. Dec. 657, 662 (BIA 2012).

## III.

Although the BIA possesses wide latitude to make "particularly serious crime" determinations under 8 U.S.C. § 1231(b)(3)(B)(ii), it must do so in accordance with its own precedent.  Because the BIA analyzed the wrong statute at the first step of its analysis, and omitted the most important factor at the second, we vacate the BIA's decision and remand to the BIA for further proceedings consistent with this opinion.

*PETITION FOR REVIEW GRANTED; VACATED AND REMANDED*